TERM OF 1901-1902. · 67

State ex rel. Kells, Jr., vs. Gas Light Company.

No. 13,900.

STATE EX REL. C. EDMUND KELLS, JR., VS. NEW ORLEANS GAS LIGHT COMPANY.

### SYLLABUS.

1. *Mandamus,* under the Common Law, is usually issued to enforce the perform· ance of public rights and duties. *Mandamus* runs to a corporation to compel the performance of an act which the law especially enjoins as a duty result-ing from an office, trust, or station. Encyclopædia of Pleading and Practice, Vol. 13, p. 493..
2. The Louisiana codal provisions are broader than under the Common Law.
3. The evidence shows that the consumer who has two sets or lines of pipes and two meters may discontinue one and use the other. One set may be plugged or capped or taken out entirely. This being the case, it follows that the con-sumer who has one set of pipes and a meter may after proper notice to the company, and after having complied with its regulations regarding plumbing and safeguarding the company's interests, discontinue the use of the illumi-nating gas entirely and use fuel gas.
4. In some instances fuel gas is supplied through a·separate system, not varying to any material extent from relator's set of pipes and meter.
5. The plumbing must be done according to the company's requirement and re port made and certificate issued.

APPEAL from the Civil District Court, Parish of Orleans— Theard, J.

*Saunders & Gurley,* for Plaintiff, Appellee.

*Buck, Walshe & Buck,* for Defendant, Appellant.

The opinion of the court was delivered by

BREAUX, J. Relator desires to use gas in his office for heating purposes and to that end sues for a writ of *mandamus* against the defendant company to compel it to furnish him with gas and a meter to record the quantity used.

The company has a franchise and is, in consequence, bound to furnish gas for either lighting or fuel purposes to consumers along its line of mains.

Relator is a dentist and fuel is necessary in his office. He sets out that his office is properly piped for fuel gas and that he has received a certificate from a competent plumber and that it is in proper condi-

State ex rel. Kells, Jr., vs. Gas Light Company.

tion. He also says that he does not use gas for lighting purposes and that he only proposes to use it for heating purposes; that the respondent company discriminates against him as it furnishes others with fuel gas. He, in support of his application, invokes the charter of the company by the terms of which it is made its duty to supply every one with gas who pays the usual price.

The respondent interposed the objection of no cause of action disclosed, and in the second place it pleaded the terms of its charter, and alleged, in substance, that the gas manufactured is the same whether for fuel or lighting purposes, and that in order to increase the consumption, under explicit regulations, it supplies gas for fuel at reduced rates, and that resulting increase of consumption enables it to deliver the gas at lower rates. The respondent company also alleges that it delivers gas at reduced rates only to those who put in distinct meters and systems of piping, one for the lighting and the other for the heating and cooking, and that only where there are two systems of piping, as just stated, gas for cooking and heating is furnished at reduced rates.

The testimony shows that the relator had been a consumer of illuminating gas. He had the meter removed and discontinued the service. Subsequently he applied to the company for heating gas and for a meter.

The company, alleges respondent, is under the obligation to supply every one with gas who conforms with its reasonable regulations and pays the price of the gas.

It offers gas to its customers at a heating power for use in grates and cooking stoves at a reduced rate of fifty per cent. It has adopted general rules as to pipes and meters. The consumer who has complied with these rules should have, and we think he has, a remedy more speedy than the ordinary.

No good reason suggests itself why *mandamus* should not go to the company, when it is evident that the one who desires to use gas is entitled to the light for which he seeks or to the heat he needs for cooking and other purposes for which gas is utilized. While *mandamus* will not lie to enforce mere contract obligations, it will issue to a corporation when the duty of the respondent is plainly and positively stated as in the case before us.

One of the objections urged is that the company owns large interests

and that its control over its business should not be interfered with. From that point of view an issue of considerable importance arises. We readily understand that no action should be taken in its regard and no remedy sanctioned that would interfere with its operations or lessen the security it should have in compelling its customers to comply with their obligations to the company. *Mandamus* will issue to compel a *quasi*-public corporation to give equal service to all. Telephone Co. vs. Telegraph Co., 52 Ann. 1850.

The writ of *mandamus,* if the duty of the company to the public or to any one of the public is manifest, cannot have the effect which relator seems to apprehend. Under the Common Law *mandamus* would issue in such cases. Codal provision as to *mandamus* being broader than it is at Common Law, as has been repeatedly decided by this court, *mandamus* is the remedy to compel performance of the duty for which relator asks.

Consumers are entitled to gas at reduced rates for fuel purposes. We understand that its charter provides that it shall be its privilege to furnish gas as before mentioned. This implies its exercise to all alike who conform with reasonable requirements.

The evidence of the respondent company does not establish that there is any necessity of putting in separate pipes and meters. Its interest can as well be safeguarded by permitting the consumer of gas for heating and cooking purposes to put only one set of pipes and a meter as by requiring, as the respondent company asks, that a double set of pipes be put in. There is no difference, we are led to believe, between pipes and meters for illuminating purposes and those for heating purposes. The company, none the less, requires both when gas for heating purposes is used. After the double set is in, the consumer can continue the use of one set and take out the other, although originally he must put in the two.

Question—"Now, then, to sum up, Mr. Jones, I understand that if Dr. Kells put in other pipes side by side, that then you would give him fuel gas rates?"

Answer—"Yes, sir."

Q.—"If he discontinued the lighting gas, you would still give him the fuel gas rates?"

A.—"Through the other pipes, yes, sir."

Q.—"Then you would object to his taking out the pipes formerly put there for illuminating?"

A.—"And leaving those——"

Q.—"Leaving the others only?"

A.—"No, sir. We could not object to that."

Mr. Jones is the secretary of the company. The rule that permits the consumer to take out one of his pipes and the meter with those pipes, or to stop using them, is not consistent with the rule that compels him when he begins to use gas for cooking and heating to put in two sets of pipes and meters. If he can take out one of the sets and continue to use the other, he should have the right to put in only one set. As one has the right take out one of his pipes, he should have the equal right to put in only one of the pipes for gas to be used in heating or cooking.

The company's interest is as well safeguarded when one set of pipes is put in as when there are two, as we gather from the evidence. The evidence discloses that there are business offices where gas is used for fuel purposes exclusively through a separate system. We have not found that the company's interest is to be less safeguarded in this case than it is in others where a new pipe and meter is put in. While we think that rule of equality and uniformity of service is the purpose of the company, as a matter of judgment in this instance with the evidence before us we are of the opinion that the relator is entitled to the gas he seeks to have supplied. More than one year has elapsed since this case has been tried in the District Court. Changes may have taken place in that time. Besides, the rules of the company that are reasonable and general should be complied with. We understand that the company requires (rightly, we think) the gas fitter to go over the work in accordance with the company's regulations and to make his report. Then an inspector is sent to make an inspection. This requirement should be complied with in this case, and after a proper report by the plumber and the report of the inspector, then the judgment appealed from should be complied with, for relator is entitled to gas for heating purposes without first having to put in another set of pipes.

The judgment appealed from is amended so as to require sufficient examination of relator's line of pipes by a plumber and a report to the company upon which a certificate is to be issued and in all other respects the company's interest is to be safeguarded without requiring relator to put in a separate set of pipes to use fuel gas exclusively.

The judgment as amended is affirmed.

Rehearing refused.

The Chief Justice and Mr. Justice MONROE dissent.