## Indiana Railway Company v. Hoffman.

[No. 20,073.   Filed January 6, 1904.]

APPEAL AND ERROR.—*Jurisdiction.*—An appeal involving the validity of a franchise is within the jurisdiction of the Supreme Court. p. 594.

STREET RAILROADS.—*Municipal Corporations.*—*Franchises.*—*Annexation of Territory.*—*Interurban Railroads.*—*Transfers.*—*Carriers.*—A street railroad company operating under an agreement with the city to issue transfer tickets free of charge to all passengers requesting the same who boarded its cars at any point upon its line within the limits of the city and whose destination might be any point upon any other line of the company within the city limits is bound to carry a passenger, tendering a transfer, to his destination on the company's line, though his destination was at a point in territory annexed to the city after the contract between the city and company was made, and on the company's interurban line on which it had a franchise entitling it to charge an additional fare outside the city as its limits were before the annexation of territory.   p. 594-601.

MUNICIPAL CORPORATIONS.—*Franchises.*—A contract granting a franchise to a street railroad company should be liberally construed in favor of the public.   p. 601.

From St. Joseph Circuit Court; *W. A. Funk*, Judge.

Action by Ervin Hoffman against the Indiana Railway Company.   From a judgment for plaintiff, defendant appeals.   *Affirmed.*

Vol. 161—38

*A. L. Brick* and *D. D. Bates*, for appellant.

*J. G. Orr*, for appellee.

JORDAN, J.—Appellant is an incorporated railway company organized under the laws of this State, and is engaged in operating an electric railroad for the carriage of passengers within and without the city of South Bend, St. Joseph county, Indiana. Appellee sued appellant to recover damages for being ejected by it from one of its cars within the limits of said city. The issues were joined between the parties, and the court, on request, made a special finding of facts within the issues, and stated its conclusions of law thereon favorable to appellee, and awarded him damages for $100. The validity of a franchise being in controversy, the appeal is within the jurisdiction of this court.

In addition to the facts above stated the following are substantially the other facts material to this question: In September, 1894, the General Power & Quick Transit Company was an incorporated company under the laws of this State, and was empowered to own, control, and operate a street railway. In said month the board of commissioners of St. Joseph county, Indiana, granted to said company the right or franchise to construct and operate a street railway between the eastern limits of the city of South Bend, as said limits then existed, and the western limits or boundary of the town of Mishawaka, along a public highway south of the St. Joseph river, which highway ran between said city and town. Various conditions and provisions were embraced in said franchise, among which was one that the fare to be paid by each passenger for being carried over said company's railroad was not to exceed five cents for a continuous passage from one point to another along said railway. The company accepted said franchise so granted by the board, and constructed its road and operated it as provided in the franchise until the 14th day of March, 1899, at which date

Indiana R. Co. *v.* Hoffman.

appellant company herein succeeded to all of its rights, franchises, property, obligations, burdens, etc., and became the owner of said railway between the aforesaid mentioned points or limits. On May 3, 1894, the common council of the city of South Bend granted the right of franchise to said General Power & Quick Transit Company, appellant's predecessor, to operate a street railway within the said city, and provided as a part of the said grant that the rate of fare for each passenger for one continuous passage upon any line or route of the railroad which might be constructed and operated within said city by said company should not exceed five cents. within the city limits, and further provided that transfer tickets should be issued by the company to passengers thereon free of all charge. The ordinance granting the aforesaid right or franchise, together with all of its conditions and provisions, was, by appellant's predecessor, accepted, and has never been changed or altered in respect to the fare as therein provided.

On January 19, 1885, the common council of the city of South Bend, by an ordinance, granted a franchise to the South Bend Railway Company to operate a street railway within the city limits, and it was provided therein that the fare for one passenger should not exceed five cents, and that transfer tickets should be given "free of charge." Appellant also became the successor of this latter company.

On June 22, 1885, said common council granted to the South Bend & Mishawaka Railway Company the right to build and construct a street railway over the following route: "Commencing at the city limits upon Vistula avenue in said city; thence to its intersection with Washington street; thence west on Washington street to Michigan street." This ordinance provided that the fare for each passenger over any route or part of said railroad should not exceed five cents between the hours of 6 o'clock a. m. and 11 o'clock p. m., after which time the company

might exact ten cents. This ordinance was silent in regard
to transfer tickets. Said company, after acquiring said
franchise, constructed a street railway over and along said
route as provided by the grant. Appellant also became
the successor of this company.

On the 11th day of September, 1899, an action was
pending in the circuit court of Laporte county against
appellant, which at that time was the successor and as-
signee of all of the aforesaid railway companies, and the
owner and in control of and operating a continuous line
of railroad from the center of the city of South Bend along
the street known as Vistula avenue therein, and over and
upon the Vistula road to the town of Mishawaka, and,
in order to effect an amicable settlement, compromise, and
adjustment of all differences existing between the said city
and the appellant and its constituent companies involved
in said action appellant submitted a proposition in writing
to the common council of the city of South Bend, which
proposition was duly accepted by the council, and be-
came a part of its records. Under this proposition,
for the purposes aforesaid, appellant proposed to pay
into the treasury of the city, within ninety days of
the acceptance thereof, $12,000 and over, this sum
being the amount of the claim against the South Bend
Railway Company, and, in addition thereto, to pay all
costs, etc., in the case. By this written proposition ap-
pellant also proposed forthwith, upon the acceptance
thereof by the city of South Bend, to issue transfer tickets
free of charge to all passengers requesting the same who
boarded its cars at any point upon its line within the limits
of the city of South Bend, and whose destination might be
upon any point upon any other line of appellant within the
said city limits; such transfer tickets to be valid only upon
the next car leaving upon the line indicated thereon after
the issuing of the same. The city of South Bend after
accepting this proposition, dismissed of record the suit

pending against the South Bend Railway Company in the Laporte Circuit Court.

On October 14, 1901, the city of South Bend, by annexing territory to the said city, extended the limits thereof eastwardly along said Vistula road to a distance of about one-half mile, and by the terms of said ordinance established the east line of the city limits upon said Vistula highway, thereby taking into the city of South Bend about one-half mile of the said Vistula public road, which had theretofore been outside of the city, and upon which part of said road said line of railway had been previously operated under the franchise granted by the board of commissioners as hereinbefore stated.

On the 14th day of January, 1902, sometime before 6 o'clock p. m., the appellee boarded one of appellant's regular east-bound passenger cars at a point on Washington street in said city of South Bend for the purpose of going to his home in Roseland park, which park is situated in the territory which was annexed to the city by the annexation proceedings in October, 1901. He paid to the conductor of the car five cents in payment of his fare. This was the usual legal fare, and he requested and received a transfer ticket for the east-bound car on Vistula avenue in said city. When the car arrived at the point where a change should be made, he immediately transferred to the Vistula avenue car running on appellant's Vistula avenue line, and upon which car it was the custom of appellant to receive and carry passengers on transfers whose destination was at any point along its route within the limits of the city of South Bend as said limits existed prior to the annexation aforesaid. He gave to the conductor in charge of the Vistula avenue car his transfer ticket, and the conductor permitted him to ride on said transfer ticket until the car had gone beyond the old limits to a point on the said Vistula road. At this point the company, by its said conductor, demanded of him that he

pay an extra fare. This he refused to do, and thereupon appellant by his officers, agents, etc., ejected him from the car. The point at which he was expelled from the car was within the limits of the city of South Bend as they were fixed under the annexation proceedings in October, 1901, but was outside the limits of the city as they existed at the time said railway was built, and as they had existed up to October 14, 1901. The point where he was ejected was upon that part of said railway line which had been built and constructed under the franchise granted by the board of commissioners as hereinbefore stated.

It is contended by counsel for appellant that the franchise granted to appellant's predecessor by the county commissioners to construct and operate the railroad upon the public highway between the cities of South Bend and Mishawaka can not in any manner be abridged or impaired without appellant's consent, either by direct or indirect proceedings on the part of the city of South Bend or any other person or corporation. This franchise, it is said, was a contract between the county and the company to which it was granted. It is insisted that the franchise granted by the board of commissioners to the General Power & Quick Transit Company, one of appellant's predecessors, to construct and operate its road along that part of the public highway in question which at that time was outside of the city limits of South Bend, and the agreement between appellant and the city under the franchise of May 3, 1894, in relation to the fare to be charged for the transportation of passengers, should be so construed as to leave both in full force and effect. While it is true that appellant, as the successor of the several other companies, as shown by the special finding, succeeded to all their rights under the grants of the several franchises in controversy, and likewise is bound by all of the conditions and stipulations composed therein, however these rights and obligations, under the facts, do not necessarily

control the decision of the question as here presented. These, as to the question of transfer tickets, may be passed, as in our opinion this matter is regulated by the contract entered into between the city and appellant on September 11, 1899.

It appears that on that date, after appellant had become the successor and assignee of all of the rights of the several companies, and was the owner of and in control of a line of railway running from the center of the city of South Bend along Vistula avenue therein on to the limits of the city, and thence along and upon the Vistula highway to the town of Mishawaka, in a settlement, adjustment, and compromise of all differences existing between appellant and the city in an action pending in the Laporte Circuit Court, it made to the city a written proposition, as shown, whereby, among other things, it stipulated and agreed forthwith upon the acceptance of its proposition by the city to "issue transfer tickets free of charge to all passengers requesting the same" who might board the cars at any point upon any of its lines within the limits of the city, whose destination might be to any point upon any other line of the company's road within said limits. This proposition, as shown, was duly accepted by the city, and placed upon its records, and became a binding contract between it and appellant. There was no provision made therein to indicate that the parties were intending to confine the agreement to the limits of the city as they existed on the said 11th day of September, 1899, and under the circumstances it can not, in reason, be asserted that the parties only intended to include the limits as they then were, and not as they might thereafter be extended. The right of the city of South Bend to enlarge her boundaries under the laws of this State is governmental, which it can not bargain away, and it may be presumed that appellant under its contract whereby it agreed to issue the transfer tickets within the city limits must have contem-

plated that the city in the future might exercise the right of annexing territory, and thereby extend its limits. Upon no view of the case can the provision "within the limits of the city" be interpreted to have been intended under the agreement embraced in the proposition made by appellant to apply only to such limits as then fixed.

It is apparently insisted by counsel for appellant that the city of South Bend, by annexing the part of the territory in which appellant, under the grant from the board of commissioners, had previously operated its road, abrogated and destroyed its rights acquired by said grant, and therefore violated our fundamental laws. But whatever rights appellant had in said territory under its grant from the board of commissioners were not impaired or destroyed by the extension of the city boundary in question, but were changed by its agreement with the city to issue transfer tickets over its lines therein to all points within the city limits. Whatever rights it had to decline or refuse to issue transfers to persons carried over its road in said territory were merged in and controlled by the contract which it subsequently made with the city. If appellant desired to stand upon and avail itself of the rights which it had acquired in the territory in question, it ought not to have entered into the agreement and contract with the city in regard to the rate of fare and the right of passengers to transfer. The regulation of the question of fare and the transfer tickets to be issued rests upon the contract in this case between appellant and the city of South Bend. It bound itself thereby not to exact of passengers transported over its lines within the city more than the maximum fare, and to issue, upon request, to such passengers, transfer tickets as provided. This agreement, as we have seen, can not be held to apply only to passengers who are transported on appellant's cars within the old limits of the city, but must be held to apply to and include any and all

passengers whose destination is within the limits of the city as they were extended by the annexation of the territory in controversy. This extension, as we have said, by the municipal authorities was the exercise of governmental powers. In a legal sense the city is a unit, although its boundaries may be changed from time to time by extension, and all persons within the limits thereof· as extended become bound by, and must yield obedience to, its ordinances. It certainly in reason can not be asserted that an ordinance adopted by a city must, in its operation, forever be confined to the limits of the municipality as they were at the time it was passed, and can not become operative in territory thereafter annexed and made a part of the corporation., And with no more force and reason can it be said in this case, under the circumstances, that the agreement of appellant in regard to issuing transfer tickets to passengers is not operative within the limits of the city as thereafter extended. In support of this proposition, see *McCallic v. Mayor, etc.,* 3 Head (Tenn.) 317; *St. Louis Gaslight Co. v. City of St. Louis,* 46 Mo. 121; *Town of Toledo v. Edens,* 59 Iowa 352, 13 N. W. 313; *Town of Milwaukee v. City of Milwaukee,* 12 Wis. 93; 20 Am. & Eng. Ency. Law (2d ed.), 1152.

Conceding, *arguendo,* that the question as to whether appellant and the city of South Bend, under the agreement in controversy, contracted solely in respect to the limits of the city as they existed at the time of the contract, and not in reference to such limits as they might thereafter be extended, is a doubtful one, nevertheless we would be required to solve such question against appellant and in favor of the city, because public contracts, as is the one herein involved, should be liberally construed in favor of the public. See *Muncie Nat. Gas Co. v. City of Muncie,* 160 Ind. 97, 60 L. R. A. 822, and the great line of authorities cited on page 112 of the opinion.

Under the facts, the expulsion of appellee from the car by the servants of appellant was wrongful. Therefore the court did not err in its conclusions of law.

Judgment affirmed.